and we have Chelsea Caston for the appellate prosecutor. And we have, I'm not sure, I've got three names here. William Carroll then for the public defender. You may proceed. May it please the court, counsel, Chelsea Caston on behalf of the state. Your honors, we begin this state appeal with no debate that every individual has a right to remain silent and request an attorney under the Fifth Amendment during custodial interrogation when they choose to unequivocally invoke that right. Yet, we also know that there are instances when a defendant has not invoked his right to counsel during a police interrogation. Today, we are dealing with a case where the defendant made a qualified statement about one aspect of the events leading up to his arrest. The officer asked, did you shoot your brother? The defendant said no. The officer said in the foot and the defendant stated, I'm not going to answer that question without my lawyer. When someone uses the word that in a sentence, it's in reference to something specific. It's an indication of a specific. It can be used to mean to an extent. It isn't going to be used to apply to a general statement. It's a qualifier. When the police officer proceeded to ask other questions about the event, he stated, tell me about the parts you want to tell me about, but did not even ask if the defendant had shot his brother in the foot. The defendant continued to volunteer his side of the story after the question about his brother. Later, the defendant ended up initiating the conversation about his brother again when he volunteered that one of the bullets he fired had ended up in his brother's foot. This was not a particularly long interview. It's just under 37 minutes. And to properly invoke a right to counsel, a suspect must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement as a request for an attorney. The inquiry is entirely objective and the subjective expectations of the suspect are irrelevant. Like in the case of Connecticut v. Barrett, the trial court disregarded the ordinary meaning of the defendant's statement. In Barrett, the defendant stated that he would not make any written statements without the presence of his attorney, but he was willing to speak orally with the police. So while the police were limited by the defendant's terms, it did not prohibit all further discussion with police where the defendant had agreed to make an oral statement. If the defendant's qualification in Barrett is not a general invocation of Miranda, then the defendant here stated he wouldn't answer one question using qualifying language about one element of events that transpired is not a general invocation of Miranda in this case. So then the question comes down to how would most reasonable police officers interpret the meaning of the defendant's statement in this case? The defendant introduced the qualifier. The defendant made it clear to the reasonable officer the kind of question he was unwilling to answer. That was in reference to shooting his brother in the foot. His qualification placed the specific question outside the bounds of the interrogation, but did not invoke a general invocation of a right to counsel where police should have halted the interview. So when he is asked what topics is he willing to discuss and he says the whole thing, in your opinion that opens the whole thing back up? No, Your Honor. He clearly placed the issue of shooting his brother in the foot outside the grammars of what the officer could ask about, but that wasn't the only... So there was never any more questions that elicited any information regarding shooting his brother in the foot? Not until the defendant himself opened it back up by volunteering the fact that of the six bullets that he had fired from a gun, one ended up in Joe's foot. He freely went on to tell other aspects of the event that led up to this event. The officer didn't ask any more specific questions about shooting his brother in the foot. The defendant stated, I'm not going to answer that question without an attorney present. However, that's qualifying language, so the officer felt like it was sufficiently clear, okay, that aspect of this case is not going to be permissible to ask, but I can ask other questions. It's like if we're sitting at a table, family style, and we're sharing dishes and food, and you hand me a bowl of corn and I say I don't want that, is the assumption going to be that I don't want to eat at all? No, I just don't want the corn. It's the same thing in this situation where he says, I'm not going to answer that question. The officer's not going to assume that that means, okay, well, you don't want to talk at all. A suspect's qualified indication will not render later incriminating statements inadmissible if a reasonable police officer would believe that that qualification might place certain questions outside the boundaries of the interrogation while counsel is not present. This means that if the defendant had a subjective intent of halting all questioning, he was not sufficiently clear where a reasonable officer would think that he was willing to answer other questions. He wouldn't answer any questions about shooting, or about his brother, or about a foot. He did not ask any more questions about shooting his brother in the foot. Unless the defendant opened up the questions by a waiver by volunteering the information later, your honor. Well, how do you know to volunteer if he's not asking the questions? He's answering the questions. Your honor, the defendant was freely just giving the events per his side of the story. And he didn't talk about shooting his brother in the foot. Your honor, that came up later as he was just going through the events of the evening. I believe it's around 22 minutes and 34 seconds in the video where he ends up being a reference to one of the bullets that went in Joe's foot. And previous to that, he goes into a long explanation of the bad encounter that had gone on at Joe's house. And what had happened previously in the afternoon that had led to his going over to Joe's house. And it was all freely volunteered information that he gave once the officer said it. That was all before the question about did he shoot your brother in the foot? It was after, your honor. It was after? It was after, your honor. What was the minute marker then on where he said he wasn't going to speak about his brother's being shot? I believe that that was 12 minutes and 24 seconds. So it was about 10 minutes in between the two. Yes, your honor. Just discussing what had been going on, the defendant talked about his bad relationship with his brother, talked about family issues, talked about feeling threatened by his brother. And the other individual that was hurt in this case named Joe. And then eventually they get into more of the nitty-gritty details where the defendant starts talking about how scared he was. And so he started shooting off the gun. And the officer says, okay, so how many bullets were there? And he said, I think there were six. I emptied the clip. And the officer says something along the lines of, okay, so you fired all six shots. The first one you fired to let them know, hey, I got a gun, what were the other five? And there's some mumbling in the video, so I wasn't able to actually hear everything that he said, but one of the bullets he freely admitted went into Joe's foot. So when he said what were the other five, and there's a total of six, he clearly is asking a question that would encompass the one where he shot his brother in the foot, correct? Not necessarily, Your Honor, because he's simply asking after the defendant already volunteered that he had fired six bullets. It's a natural thing to be like, okay, well, where did they go? It's not necessarily going to go past that barrier where he says, I'm not going to answer that question, that question being, did you shoot your brother Joe in the foot? And then the defendant just proceeded to volunteer all the other information. So wouldn't the answer to one of the shots that was fired be, and one was in my brother's foot? But that was a waiver after he stated that he didn't want to answer the question. We're not going to say that the defendant can't change their mind. That's then going to free will. There's not an absolute barrier that he can't decide to volunteer the information later. And not all statements mentioning a lawyer are an effective request for the presence of counsel that should terminate all questioning, Your Honor. The trial court never reviewed the relevant case law before reaching its decision to suppress the defendant's confession. Perhaps understandable that a trial court would hesitate to challenge a defendant's Fifth Amendment right during an interrogation, but in this case the trial court actually did itself a disservice in not considering the relevant case law that distinguishes this case from a standard case of a general indication of a right to counsel. So the state requests that this court reverse the suppression of the defendant's confession where the officer did not violate the defendant's Fifth Amendment rights and remain for further proceedings where the defendant chose to use a qualifying statement that an objective inquiry would not state was a complete suppression of interrogation. Thank you. Thank you, Ms. Case. Kasten? Kasten. Thank you. You'll have the opportunity to resort. Thank you. Mr. Carroll? May I please have a question? Mm-hmm. As counsel has pointed out, Your Honor, the- Can we just state your name for the record? I'm sorry, sir. William Carroll for the appellee, Anthony Firestein. As counsel has pointed out, the issues in this case are whether or not my client, Anthony Firestein, invoked his right to counsel, whether that invocation was complete or limited, and whether he waived it. As to his invocation of his right to counsel, he was asked the question, did you shoot your brother in the foot, to which he replied, I'm not going to answer that question without my lawyer. His response was in response to that question, and it was, in my opinion, it was an invocation of his right to counsel simply stated in the negative. It would be preferable, obviously, for him to say, I want a lawyer, but to say I'm not going to answer that question without a lawyer is the same thing stated, again, in the negative. Counsel is correct that the standard is whether a reasonable officer would have believed that the defendant requested a lawyer. Now, the courts have never, ever required magic words. As Souter pointed out, and Davis, which the rest of the court adopted in dicta, a defendant need not speak with the discrimination of an Oxford Don. But I think that the state is essentially conceding that he did invoke his right not to talk about that specific event, aren't they? They are, Your Honor, and I'll move on to their argument that his invocation was limited. Your Honor, they cite Connecticut v. Barrett in the argument that his invocation was limited. In Connecticut v. Barrett, the defendant told the police that he was not willing to give them a written statement, but was willing to speak to them. As the Supreme Court pointed out, his invocation was accompanied by an affirmative willingness to speak. He never really, in Connecticut v. Barrett, he never really invokes his right to counsel at all. If I say I'm not going to write something down, however, I'll talk to you, you're still telling the officer I'm going to talk, I'm going to answer your questions. My client does not do that. My client says, I'm not going to answer that question without my lawyer. He doesn't say, I'm not going to answer that question without my lawyer, but I'm happy to answer anything else you have. In brief, the state also cited a case called Borough v. Commonwealth of Virginia, which is also very different. In that case, the defendant told the police officer, there are certain questions I'm not willing to talk to you about without a lawyer. I believe it was in reference to a question regarding cocaine. The officer then immediately with his next question said, so are you not willing to talk to me without a lawyer? To which the defendant replied, no, no, I'll talk to you, just there are some questions I won't talk to you about without a lawyer. Again, that was an affirmative willingness to speak. At the time he invoked, he gave an affirmative willingness to speak, which is not the case in the case at bar. I would also like to point out, because the state seems to be arguing that my client invoked but then waived his right, that, and I know the court has seen the facts and has probably either watched the video or will, the officer asked five questions immediately after being told I'm not going to answer that question without my lawyer. The very next question is, did you shoot John? Now, I would argue that that's not really a different line of questioning. If he's being questioned as to whether he's the shooter, and the next question is, are you the shooter, does the victim really change the line of questioning in him? The next three questions the cop asked were all about where he was, whether he was there, maybe I have the wrong guy, were you there? Again, you have to be there to be the shooter. So this is not a different line of questioning either. And because he asked those five questions, those five questions, I believe, were in violation of the rule in Edwards v. Arizona, which states that once a defendant has indicated his willingness to deal with the police only through counsel, but no further questions may be asked of him until counsel is provided. That was also in Smith v. Illinois. It restated in Smith v. Illinois. And the reason for that rule is so that a defendant does not have his will overborne. It's so that a defendant is not made to believe that he might as well talk because no lawyer is coming. I think those questions cause that. And I also think the clarifying question the officer asked, which is the sixth question, and it's 30 seconds after my client's answer in, I'm not going to speak, I'm not going to answer that question without a lawyer, 30 seconds and six questions later, the officer asks, so what are you willing to talk to me about? Now, I think that has to be read in context with the original question. Did you shoot your brother? I'm not going to answer that without my lawyer. So what are you willing to talk to me about? Implied in that very question is I'm not getting a new lawyer. It's clearly implied in that. Again, the standard is a reasonable officer. It's an objective standard. It's not subjective. But isn't it clear subjectively that the officer knew he invoked his right to counsel? Why else would he ask him, is there anything else you're willing to talk to me about? Well, the reason why he might have asked him is he thought that he was limiting his invocation to just talking about shooting his brother. And I think that's the argument, Judge. Anyway, ask me what other reason. Anyway, go ahead. Yes, Your Honor. At the trial court, the officer's testimony was he was sure at that moment that the only thing he didn't want to talk about was shooting his brother in the foot. I believe that was his testimony if you look in the record. So I think it's clear that he, even if he's not a reasonable officer, knew that there was an invocation of a right to counsel. He continued to ask questions in violation of Edwards, in violation of R.B. Smith, and over and over he finds his right to persist in his desire to have a lawyer. And those two rules, that's a backline rule. It's one of the only rules in this area that's a backline rule that once it's invoked, the right to counsel is invoked, questioning must cease. I will also point out that as you watch the interview, never mind, strike that, Your Honor. Your Honor, for those reasons, I believe the circuit court judgment going should be affirmed. Thank you. Thank you, Mr. Carroll. Ms. Kasten. Your Honor, I was just briefly addressing the case law that the state relies on in this case. We're not going to have a case that perfectly matches the facts that we have in this case. We can only find the ones that are the most analogous. And in this particular case, the state presented two cases that were very useful and should have been considered by the trial court. One of those was Connecticut v. Barrett, and the other, while not being binding law, was extremely educational and should have been considered because the facts were similar, and that was Burl, which was a Virginia case that provided a very thorough analysis of Connecticut v. Barrett. And unless the court has specific questions about that case law, I'm not going to go into the analysis because those are provided in the people's brief, so I'm not going to spend your time now going over what we've already discussed in it. However, I do think that it's important to keep in mind that this is held to an objective inquiry where the reasonable officer, as to what the reasonable officer would believe, based on the statement that has to be made with a requisite level of clarity. So, no, the officer did not ask him, what do you mean by saying you're not going to answer that question? It's a very clear statement. He didn't have to ask for clarity because it was sufficiently clear, which he stated during the hearing on the motion to suppress. He didn't want to answer that question, so he moved away from it. He moved away from the issue of Joe. But Joe was not the only person involved in this case, so the officer moved on to the next aspect of it. He was not required to ask for clarification where it was already relatively clear, okay, the defendant is going to put up a barrier on this aspect of the case, but he's not invoking his right to counsel. He just doesn't want to answer that question. I can move on to the rest. Any reasonable objective officer is going to hold the same belief and apply it in the same manner. There was nothing improperly done in this case, and the trial court erred when it failed to even contemplate the case law that was relevant. They just generally applied a Fifth Amendment right to invoke your right to counsel, made their decision as soon as both parties closed on their arguments, no mention of case law, just rolled on the whole decision, which is how we've ended up here today, Your Honors, because we believe that it was sufficiently clear that the defendant did not invoke his right to counsel. He put up the shield on one aspect. The officer proceeded to ask other questions that were entirely permissible, and in the course of those questions, the defendant ended up volunteering, waiving his right to counsel and volunteered additional information. That was his choice. He had his own free will in order to do that. And unless the court has any further questions for us, we would ask that this court reverse the suppression of defendant's confession and remand him for the proceedings. Thank you. Thank you, Ms. Kasten and Mr. Carroll. And for your briefs and arguments, I will take the matter under adjournment.